## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FROZEN WHEELS, LLC        *
       *
      Plaintiff/Counter Defendant    *
   v.        *
       *      Civil Action No. CCB-20-2479
Potomac VALLEY HOME        *
MEDICAL, INC.        *
       *
      Defendant/Counter-Plaintiff    *
             ************

## MEMORANDUM

Pending before the court is the plaintiff/counter-defendant Frozen Wheels LLC ("Frozen Wheels")'s motion to dismiss counterclaims brought by the defendant/counter-plaintiff Potomac Valley Home Medical, Inc. ("Potomac"), (ECF 21), and Potomac's motion for leave to file an amended counterclaim (ECF 20). The matter has been fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, the motion to dismiss will be granted in part and denied in part and the motion for leave to amend will be denied.

## BACKGROUND

Potomac's counterclaims arise out of a dispute regarding the number of isolation gowns that Frozen Wheels agreed to supply to the State of Maryland on behalf of Potomac. Potomac alleges that it entered into a purchase order with the State for a number of items, including 1,500,000 isolation gowns. (ECF 14, Counterclaim ("CC") ¶ 1). The purchase order with the State required that the 1,500,000 gowns be delivered to the State by May 30, 2020. (*Id.* ¶ 2). Potomac sought to procure the gowns through an order from Frozen Wheels. Through its President, Walid Beidas ("Beidas"), Potomac informed counter-defendant Isaac Halwani ("Halwani") of its agreement with the State, including the quantity of gowns the State required and the date by which

they were to be delivered. (*Id.* ¶ 3). Halwani represented that Frozen Wheels would be able to procure 1,500,000 isolation gowns and deliver them to the State on or before May 30, 2020. (*Id.* ¶ 4). On May 26, 2020, following that conversation, Potomac sent to Frozen Wheels a purchase order ("PO-05") for 1,500,000 isolation gowns, (*id.* ¶ 5; ECF 14-1, PO-05), and Frozen Wheels accepted PO-05 and confirmed in writing an agreement between Frozen Wheels and Potomac for Frozen Wheels to procure 1,500,000 isolation gowns pursuant to PO-05, (CC ¶ 6). Based on Halwani's representation that Frozen Wheels could timely deliver 1,500,000 gowns to the State, Potomac did not seek isolation gowns from any other suppliers. (*Id.* ¶ 7). Frozen Wheels then failed to deliver 1,500,000 isolation gowns to the State by May 30, 2020, but instead delivered only 616,450 gowns. (*Id* ¶ 8).

On August 27, 2020, Frozen Wheels filed a complaint against Potomac and Beidas for breach of contract, fraud, negligent misrepresentation, promissory estoppel, and unjust enrichment, for Potomac's alleged conduct concerning a separate but related agreement between Potomac and Frozen Wheels for Frozen Wheels to procure KN-95 masks for the State on behalf of Potomac. (ECF 1, Compl.).[1] On October 2, 2020, Potomac answered Frozen Wheels's amended complaint and brought counterclaims against Frozen Wheels for breach of contract, promissory estoppel, negligent misrepresentation, and fraud or intentional misrepresentation concerning Frozen Wheels's alleged failure to procure the 1,500,000 isolation gowns for the State. (ECF 14, Answer & Counterclaim). On October 16, 2020 Potomac filed a motion for leave to amend its counterclaims to add several allegations to its claims for negligent misrepresentation and intentional misrepresentation against Frozen Wheels and to add claims against Halwani

---

[1] Frozen Wheels has since amended its complaint to voluntarily dismiss its fraud and negligent misrepresentation claims and to dismiss Beidas as a defendant. (ECF 40, Second Am. Compl. ("SAC")). In Potomac's answer to Frozen Wheels's second amended complaint, it reasserted its counterclaims against Frozen Wheels (ECF 44).

individually for negligent misrepresentation and intentional misrepresentation. (ECF 20). Frozen Wheels moved to dismiss Potomac's counterclaims under Rule 12(b)(6), (ECF 21), and opposed the motion for leave to amend (ECF 24). The motions have been fully briefed (ECF 26, Opp'n; ECF 29, Reply) and are ripe for resolution.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)

(citing Fed. R. Civ. P. 10(c)), and documents submitted by the movant not attached to or expressly incorporated in the complaint, so long as they are "integral to the complaint and there is no dispute about the document's authenticity," *id.* (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). A document is "integral" to the complaint if its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)) (emphasis removed). "[I]f a court considers generally known or undisputed facts at the motion to dismiss stage, it must identify the fact or facts it is noticing, and the facts must be construed in the light most favorable to the plaintiffs." *Tchatchou v. India Globalization Cap. Inc.*, No. CV PWG-18-3396, 2021 WL 307415, at *5 (D. Md. Jan. 29, 2021) (internal quotation marks omitted).[2]

Allegations of fraud must be pled with particularity. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Leave to amend should be freely granted under Rule 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (explaining that leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile"). An amendment is futile when the proposed amended complaint would not satisfy

---

[2] Unpublished opinions are cited for the soundness of their reasoning rather than for any precedential value.

the requirements of the federal rules. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

## ANALYSIS

### I.   Motion to Dismiss Counterclaims

#### a.   Breach of Contract

To state a claim for breach of contract under Maryland law, a plaintiff must establish that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). Frozen Wheels argues Potomac's breach of contract claim fails as a matter of law because (1) PO-05 itself is insufficient to constitute a contract for the sale of goods because it is not signed by Frozen Wheels, *see* Md. Code Ann., Com. Law § 2-201(1); (2) the allegation that Frozen Wheels confirmed in writing the agreement to provide 1,500,000 gowns is conclusory; and (3) Potomac's allegations are contradicted by two purchase orders, PO-06 and PO-07 (ECFs 21-2 and 21-3), which Potomac sent subsequent to PO-5, which together ordered 616,450 gowns from Frozen Wheels and which Frozen Wheels fulfilled, as evidenced by Frozen Wheels's invoices and bills of lading for each (ECFs 21-4, 21-5). Potomac responds that Frozen Wheels's motion ignores its well-pleaded factual allegations of the existence of a contract between the parties for 1,500,000 gowns and improperly asks the court to convert the motion into one for summary judgment.

The court first addresses whether it may consider PO-06, PO-07, and their corresponding invoices and bills of ladings submitted by Frozen Wheels. Documents that "constitute the core of the parties' contractual relationship in a breach of contract dispute" may be deemed integral to the complaint and considered on a motion to dismiss if the non-moving party does not challenge their authenticity. *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 & n.4; *see also Telogis, Inc. v.*

5

*InSight Mobile Data, Inc.*, No. PWG-14-563, 2014 WL 7336678, at *3 (D. Md. Dec. 19, 2014). For example, in *Telogis*, the plaintiff-employer's claims turned on whether non-compete agreements existed between it and several former employees, and the plaintiff submitted the agreements in question with its complaint. 2014 WL 7336678, at *1. In support of its motion to dismiss, the defendant submitted documents purporting to modify the agreements by removing the non-competition provisions. *Id.*, at *2. The court considered both the agreements and the modifications in ruling on the motion to dismiss because both were essential to determining the parties' contractual obligations and because the plaintiff did not dispute their authenticity. *Id.*, at *3. Similarly, in this case Potomac does not dispute the authenticity of any of the documents Frozen Wheels attached to its motion to dismiss, and, under the Uniform Commercial Code, where purchase orders are often modified by subsequent communications and transactions "finalized simply by performance and payment in accordance with the latest proposals," *see Audio Visual Associates, Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 258 (4th Cir. 2000), any purchase orders, invoices, and bills of lading may be part of the core of the parties' contractual relationship, *see Telogis*, 2014 WL 7336678, * at 3. Accordingly, the court will consider PO-06, PO-7 and their corresponding invoices and bills of lading along with PO-05.

Turning to the sufficiency of Potomac's allegations, Potomac does not, as Frozen Wheels argues, contend that PO-05 itself is sufficient to allege the existence of a contract; rather, it alleges that PO-05 was an offer by Potomac to purchase 1,500,000 gown which Frozen Wheels accepted by confirming the order in writing. (CC ¶ 6).

Contracts for the sale of goods are governed by the Uniform Commercial Code, codified in the Maryland Code at Md. Ann Code, Comm. Law § 1-101 *et seq.* Under the Code, a seller's offer commonly "takes the form of a purchase order, providing product choice, quantity, price,

and terms of delivery," and a written acknowledgement may suffice as acceptance. *Audio Visual Assocs.*, 210 F.3d at 259.[3] But at all times the key inquiry is whether "the essential requirement for contract formation is satisfied—i.e. that there be an objective manifestation of mutual assent by the parties[.]" *Id.* at 258. Until there is such a "meeting of the minds," "buyers and sellers may freely exchange purchase orders" and other communications "relating to a proposed transaction without incurring contractual obligations[.]" *Id.* Frozen Wheels argues that PO-06 and PO-07, dated May 29, 2020 and May 31, 2020, respectively, and their corresponding invoices and bills of lading show that negotiations regarding the number of gowns to be procured were ongoing after Potomac submitted PO-05 and that PO-06 and PO-7 and their proofs of fulfillment definitively constitute the parties' final and true agreement for 616,450 gowns. This argument ignores Potomac's allegation that Halwani confirmed the 1,500,000-gown quantity in writing. Construing the facts in the light most favorable to Potomac, *see Tchatchou*, 2021 WL 307415, at *5, it is plausible that PO-05, PO-06, and PO-07 were all sent in quick succession and that Frozen Wheels confirmed, as Potomac alleges, that PO-05 for 1,500,000 isolation gowns could be fulfilled and was accepted. In this light, that Frozen Wheels appears to have fulfilled only PO-06 and PO-07 is potential evidence of a breach of the parties' agreement rather than evidence of an agreement for a different quantity of gowns. Without the benefit of the parties exchanging discovery, (when presumably Potomac will be able to produce the written confirmation) the court is not prepared to conclude at the motion to dismiss stage that Frozen Wheels's later invoices and bills of lading under PO-06 and PO-07 definitely show that Frozen Wheels rejected Potomac's offer to purchase

---

[3] Because PO-05 is more appropriately considered an offer that Potomac alleges was accepted by another form of written communication, it is immaterial that it was not signed. Maryland's statute of frauds may be satisfied if a writing in confirmation of a contract and sufficient against the sender is received and the party receiving it has reason to know its contents, unless written notice of objection to its contents is given within ten days after it is received. Md. Code. Com. Law, § 2-201(2). At this stage, the allegation that Frozen Wheels confirmed in writing an agreement to procure 1,500,000 gowns and that no written notice of objection was given is sufficient to satisfy the statute of frauds.

the 1,500,000 gowns and accepted only a separate offer for a lower quantity of 616,450 gowns. Accordingly, Frozen Wheels's motion as to Potomac's breach of contract claim will be denied.

### b.  Reasonable Reliance

Potomac's other claims, promissory estoppel, negligent misrepresentation, and intentional misrepresentation, all require Potomac to show that it reasonably relied on a promise or statement by Frozen Wheels.

An action for detrimental reliance or promissory estoppel requires the plaintiff to show (1) a clear and definite promise by the defendant; (2) the defendant had a reasonable expectation that the offer will induce action or forbearance on the part of the plaintiff; (3) the plaintiff actually and reasonably relied on the promise; and (4) the promise caused a detriment which can only be avoided by the enforcement of the promise. *Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996).

An action for negligent misrepresentation requires the plaintiff to show that (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that the plaintiff act upon the statement; (3) the defendant knew that the plaintiff was likely to rely on the statement which , if erroneous would cause loss or injury; (4) the plaintiff justifiably relied on the statement; and (5) the plaintiff suffered damages. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136 (2007).

An action for intentional misrepresentation or fraud requires the plaintiff to show (1) the defendant made a false representation to the plaintiff (2) that was either known to the defendant to be false or was made with reckless indifference as to its truth (3) for the purpose of defrauding the plaintiff, (4) and that the plaintiff reasonably relied on the misrepresentation and (5) suffered injury as a result. *Hoffman v. Stamper*, 385 Md. 1, 28 (2005).

8

Frozen Wheels argues that Potomac could not reasonably rely on an alleged representation that it could provide 1,500,000 gowns given that subsequent purchase orders, PO-06 and PO-07, reflect a different quantity of gowns. Potomac responds that the reasonableness of reliance is generally an issue reserved for the finder of fact and is inappropriate for resolution on a motion to dismiss. *See, e.g.*, *200 N. Gilmor, LLC v. Cap. One, Nat'l Ass'n*, 863 F. Supp. 2d 480, 491 (D. Md. 2012). Frozen Wheels's argument is predicated on the assumption that PO-06 and PO-07 and their associated invoices and bills of lading comprise the parties' final agreement, making it unreasonable for Frozen Wheels to rely on an (assumedly) earlier written acknowledgment that Frozen Wheels would procure 1,500,00 gowns. As explained previously, whether PO-06 and PO-07 reflect a rejection of PO-05 or were simply part of a negotiation that culminated in a written acceptance of Potomac's initial offer to procure 1,500,000 gowns, is a question of fact not appropriate for resolution at this stage of the proceedings. Accordingly, because reasonable reliance is the only basis on which Frozen Wheels argued that the promissory estoppel claim must be dismissed, Frozen Wheels's motion as to that claim will be denied. The court will now address the parties' remaining arguments as to Potomac's negligent and intentional misrepresentation claims.

### a.   Negligent Misrepresentation and Fraud/Intentional Misrepresentation

Frozen Wheels argues that Potomac's negligent misrepresentation claim also fails because promises of future conduct are not actionable. This is an accurate statement of Maryland law, to which Potomac does not respond in its opposition. A promise of future conduct is actionable only where the party making the representation regarding the future conduct knows, at the time the statement was made, that it did not intend to carry out the promise—if that is so, then the claim is one for *fraudulent* misrepresentation. *Heritage Oldsmobile-Imports v. Volkswagen of America,*

*Inc.*, 264 F. Supp. 2d 282, 291 (D. Md. 2003). Here, Potomac asserts that Frozen Wheels made a representation of a future intention to provide 1,500,000 isolation gowns. This statement is only actionable against Frozen Wheels if it was fraudulent, meaning that Potomac's negligent misrepresentation claim is, at best, duplicative of its intentional misrepresentation claim. Accordingly, Potomac's negligent misrepresentation claim will be dismissed. *See 200 N. Gilmor*, 863 F. Supp. 2d at 493 (dismissing negligent misrepresentation claim sounding in fraud where it was duplicative of other fraud claims).

As for the intentional misrepresentation claim, Frozen Wheels argues that this claim should fail because it is not stated with particularity under Rule 9(b). To meet this standard, Potomac must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel Wilson*, 525 F.3d at 379 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F. 3d 776, 784 (4th Cir. 1999)). Potomac's allegation that Hawlani represented to Beidas that Frozen Wheels would be able to procure 1,500,000 isolation gowns by May 30, 2020 does not meet this standard. While Potomac pled the identity of the person making the alleged misrepresentation, there are no allegations as to other necessary circumstances of the alleged fraud, including the time and place of the alleged statement. *See id.* (affirming dismissal of fraud-based False Claims Act claim for failure to plead with particularity where the complaint provided some detail, including the time of the fraud and the identity of the person making the misrepresentation, but lacked  any specific facts about other important elements of the fraudulent scheme, including how the alleged fraudulent statement induced the government's decision to award a contract to the defendant). Even if Potomac's allegations otherwise complied with Rule 9(b), the claim fails to plausibly allege fraudulent intent. *See United States ex rel Wilson*, 525 F.3d at 379; *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 686–87 (2009) ("Rule 9 merely excuses a party from pleading . . . intent under an elevated pleading standard. It does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8."); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012). Potomac asserts only that Halwani made the representation at issue with knowledge of its falsity or with reckless indifference to the truth of the representation. (CC ¶ 28). This assertion is a legal conclusion unsupported by any factual allegations in Potomac's complaint. *See Ellis v. Palisades Acquisition XVI LLC*, No. CV JKB-18-03931, 2019 WL 3387779, at *7 (D. Md. July 26, 2019) (dismissing fraud-based Maryland Consumer Debt Collection Act claim against one defendant where the plaintiff made only conclusory allegations regarding that defendant's knowledge of the invalidity of the plaintiff's debt, but permitting claim against separate defendant whose knowledge could be inferred on the facts pled). Though Potomac alleges that Halwani made a representation that Frozen Wheels could provide 1,500,000 gowns and that Frozen Wheels confirmed that representation in writing, there are no other facts from which it is reasonable to infer that Halwani knew the statement to be false at the time it was made. That the company later procured a lesser quantity of gowns is insufficient to infer that it never believed it could, or never intended to, fulfill an order for the greater quantity. Accordingly, Frozen Wheels's motion as to the intentional misrepresentation claim will be granted.

## II.     Motion for Leave to Amend

As explained previously, on October 16, 2020, Potomac filed a motion for leave to file an amended counterclaim. The amended counterclaim clarifies that Mr. Halwani, on behalf of Frozen Wheels, confirmed the alleged agreement for 1,500,000 gowns in writing, (*see* ECF 20-4, Redlined Amended Counter Claim ¶ 11), and adds counts of negligent misrepresentation and intentional misrepresentation against Halwani individually, (*id*. ¶¶ 42–59). Potomac also adds to its negligent

11

misrepresentation claim against Frozen Wheels allegations that Frozen Wheels owed a duty "to exercise reasonable care in making representations about the capabilities of Frozen Wheels, LLC to secure and deliver goods[,]" that "Frozen Wheels, LLC knew or should have known, if it had exercised reasonable care under the circumstances, that its representations regarding its ability to secure and deliver 1,500,000 FDA-approved isolation gowns by May 30, 2020 were false and misleading[,]" that "Frozen Wheels, LLC's representations about its ability to secure and deliver 1,500,000 isolation gowns were false[,]" and that PHVM "would have been able to acquire the requisite number of gowns and would have been able to arrange for their delivery to the State . . . by the deadline . . . had it not relied upon the false representations of Frozen Wheels, LLC . . . ." (*Id.* ¶¶ 25–26, 31, 33). And to its intentional misrepresentation claim against Frozen Wheels, Potomac adds the allegations that "[c]ontrary to Frozen Wheels, LLC's representations, [it] was not able to and did not deliver 1,500,000 isolation gowns . . . by May 30, 2020[,]" and Potomac "would have would have been able to acquire the requisite number of gowns and would have been able to arrange for their delivery to the State . . . by the deadline . . . had it not relied upon the false representations of Frozen Wheels, LLC . . . ." (*Id.* ¶¶ 39–40).

Frozen Wheels argues that permitting amendment would be futile because none of the amendments to the negligent and intentional misrepresentation claims against Frozen Wheels remedy the legal deficiencies of those claims and because Potomac's allegations against Halwani rest on facts identical to those alleged against Frozen Wheels, meaning that the claims against Halwani also fail as a matter of law. The court agrees with both contentions.

As explained previously Potomac's negligent misrepresentation fails because it is either premised on a non-actionable promise of future conduct or, if the allegation is that Frozen Wheels knew its representations to be false, it is duplicative of its intentional misrepresentation claim, and

the intentional misrepresentation claim fails to plausibly allege fraudulent intent. Potomac's proposed amendments are largely conclusory statements that mirror the elements of each claim and do not cure the defects in the complaint the court has identified. *See U.S. ex rel. Wilson* , 525 F.3d at 376 (amendment is futile when the proposed amended complaint would not satisfy the requirements of the federal rules). Potomac's negligent and intentional misrepresentation claims against Halwani are similarly futile as they are predicated on the same deficient factual allegations. Accordingly, Potomac's motion for leave to amend its counterclaims will be denied.

## CONCLUSION

For the reasons stated herein, Frozen Wheels's motion to dismiss Potomac's counterclaims will be granted in part and denied in part and Potomac's motion for leave to amend its counterclaims will be denied. PHVM's counterclaims for negligent misrepresentation and intentional misrepresentation will be dismissed and its counterclaims for breach of contract and promissory estoppel will proceed. A separate Order follows.


6/2/2021  
Date

_____/S/_____  
Catherine C. Blake  
United States District Judge