## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**FROZEN WHEELS, LLC,**

                                          *

    *Plaintiff/Counter-Defendant,*

v.                                     *         **Civil Case No: 1:20-cv-02479-CCB**

**POTOMAC VALLEY HOME
MEDICAL, INC.,**               *

    *Defendant/Counter-Plaintiff.*

                                          *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

## REPORT & RECOMMENDATION

This Report and Recommendation addresses Defendant/Counter-Plaintiff's, Potomac Valley Home Medical, Inc. ("Potomac Valley"), Motion for Default Judgment (the "Motion") against Plaintiff/Counter-Defendant, Frozen Wheels, LLC ("Frozen Wheels"). (ECF No. 97). United States District Judge Catherine C. Blake referred this matter to the undersigned on January 16, 2024, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF No. 98).[1] Frozen Wheels has not filed a response and the time to do so has now passed. *See* Loc. R. 105.2 (D. Md. 2023). In addition to the Motion, the undersigned also conducted an evidentiary hearing regarding the amount of damages that Potomac Valley may be entitled to should it be entitled to default judgment. (ECF Nos. 99, 101). Frozen Wheels did not appear for that hearing. For the reasons that follow, I respectfully recommend that Potomac Valley's Motion for Default Judgment be granted in part and denied in part.

---

[1] *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 534 (D. Md. 2011) ("Under the Magistrate Judges Act, 28 U.S.C. § 636, a district judge may designate a magistrate judge to conduct hearings (if necessary) and report proposed findings of fact and recommendations for action on a dispositive motion. A motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act.") (internal citations omitted).

## I.    BACKGROUND

### A.    Procedural Background

Frozen Wheels commenced this action on August 27, 2020, against Potomac Valley.  (ECF No. 1).  Frozen Wheels then filed an Amended Complaint on September 17, 2020, against Potomac Valley and Potomac Valley's President, Waleed Adnan Beidas, alleging breach of contract, fraud, negligent misrepresentation, promissory estoppel, and unjust enrichment.  (ECF No. 9).  Potomac Valley filed an answer to the First Amended Complaint on October 2, 2020, asserting counterclaims based on breach of contract, promissory estoppel, negligent misrepresentation, and intentional misrepresentation/fraud ("Initial Counterclaim").  (ECF No. 14).  Judge Blake ultimately granted Frozen Wheels' motion to dismiss the negligent misrepresentation and intentional misrepresentation counterclaims therein and denied Potomac Valley's request to file an amended counterclaim adding Isaac Halwani, the sole member of Frozen Wheels, as a Counter-Defendant ("Amended Counterclaim").  (ECF No. 47).  However, Frozen Wheels filed a Second Amended Complaint in the interim (ECF No. 40) against Potomac Valley only, which Potomac Valley responded to by filing another Answer and Counterclaim which re-asserted in virtually identical fashion its claims for breach of contract and promissory estoppel, and also the claims for negligent misrepresentation and intentional misrepresentation that were dismissed by Judge Blake with regard to the Initial Counterclaim ("Second Counterclaim").  (ECF No. 44).  Frozen Wheels did not seek dismissal of any of the causes of action in the Second Counterclaim at any time thereafter, nor did Judge Blake dismiss any portion of the Second Counterclaim filed pursuant to Frozen Wheels' Second Amended Complaint.  Accordingly, the negligent and intentional misrepresentation claims appear again to be part of Potomac Valley's cause of action against Frozen Wheels in addition to its breach of contract and promissory estoppel claims.

Judge Blake then granted various scheduling order extensions over the coming months. (ECF Nos. 56, 66).  After the close of discovery, Frozen Wheels filed a motion for summary judgment (ECF No. 68) and motion to dismiss and for default (ECF No. 69) in November 2021. Judge Blake denied both motions.  (ECF No. 79).  The case was then stayed in January 2023 after Frozen Wheels filed a suggestion of bankruptcy because Frozen Wheels' filing of bankruptcy automatically stayed any proceedings against it to collect debts, such as Potomac Valley's counterclaims.  (ECF Nos. 84, 85); *see also* 11 U.S.C. § 362(a).  Frozen Wheels expressly requested that the Court stay the case until the U.S. Bankruptcy Court for the Southern District of Florida ruled on Frozen Wheels' motion (in that court) to permit Potomac Valley to continue to prosecute its counterclaims against Frozen Wheels rather than abiding by the automatic stay required by 11 U.S.C. § 362(a).  (ECF No. 84-1 at 2–3).[2]  In granting Frozen Wheels' request to stay the case pending resolution of its motion before the bankruptcy court, Judge Blake directed Frozen Wheels to file a status report within ten days of the bankruptcy court's decision.  (ECF No. 85).  On July 11, 2023, Judge Blake directed the parties to submit a status report no later than July 25, 2023, having heard no news of whether the bankruptcy court adjudicated Frozen Wheels' motion.  (ECF No. 87).

Although filed untimely, Frozen Wheels' counsel then submitted a status report on August 4, 2023, indicating that he would be filing a motion to withdraw his appearance on behalf of Frozen Wheels accompanied by a formal motion to withdraw that same day.  (ECF Nos. 88, 89).  Judge Blake granted the motion to withdraw on August 14, 2023, directed Frozen Wheels to obtain new counsel by September 5, 2023, and directed the parties to file a status report by October 6, 2023. (ECF Nos. 90, 91).  Potomac Valley obliged by filing a status report on October 6, 2023, pointing

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

out that (1) Frozen Wheels' motion in the bankruptcy court was granted on February 10, 2023, yet

Frozen Wheels never informed the Court as Judge Blake directed; and (2) no new appearance of

counsel had been entered by September 5, 2023, also as Judge Blake directed.  (ECF No. 92).

Accordingly, Potomac Valley filed a motion to dismiss for lack of prosecution on October 23,

2023, which Judge Blake granted on November 17, 2023, dismissing all of Frozen Wheels' claims

and directing Frozen Wheels to show cause why default should not be entered against it regarding

Potomac Valley's counterclaims.  (ECF Nos. 93, 94, 95).[3]  Frozen Wheels never responded, so the

Court entered default against Frozen Wheels on December 14, 2023.  (ECF No. 96).  Potomac

Valley then filed the present Motion on January 16, 2024, which has gone unopposed by Frozen

Wheels.  (ECF No. 97).

B.      Factual Background

Potomac Valley is a Maryland corporation with its principal place of business located in

Maryland.  (ECF No. 44 at 7).  Frozen Wheels "has represented to this Court" that it is a Florida

limited liability company with its principal place of business in Miami, Florida.  *Id.*  On or about

April 30, 2020, Potomac Valley entered into a purchase order with the State of Maryland for "a

variety of items, including 1,500,000 isolation gowns."  *Id.*  That purchase order required that the

isolation gowns be delivered to the State by May 30, 2020.  *Id.*  Potomac Valley then informed

Frozen Wheels' sole member, Halwani, of the purchase order, who represented to Potomac

Valley's principal, Beidas, that Frozen Wheels would be able to procure the isolation gowns and

deliver them to the State of Maryland by May 30, 2020.  *Id.* at 8.  Potomac Valley subsequently

executed and delivered to Frozen Wheels a purchase order on May 26, 2020, memorializing the

---

[3] *See* Local Rule 101.2(b) (D. Md. 2023) (warning that, in the event that counsel "for any party other than an individual" withdraws their appearance, that party "must have new counsel enter an appearance or be subject to the dismissal of its claims and/or default judgment on claims against it").

agreement. *Id.* Halwani, on behalf of Frozen Wheels, accepted the purchase order and "confirmed in writing the agreement" to provide the purchase order. *Id.*; *see also* (ECF No. 103-2 at 2).

Potomac Valley surrendered its opportunity to seek isolation gowns from alternate suppliers given its purported agreement with Frozen Wheels. *Id.* However, Frozen Wheels failed to deliver the isolation gowns to the State of Maryland as required by the terms of the purchase order, and instead delivered only 616,450 isolation gowns by May 30, 2020. *Id.* Potomac Valley further alleges that when Halwani, on behalf of Frozen Wheels, "had an opportunity to obtain 1 million gowns on May 26[, 2020], they decided not to do so to [Potomac Valley's] detriment, because Halwani deemed them too expensive, such that they would have cut into his and Frozen Wheels' profits." *Id.* Accordingly, Potomac Valley filed their counterclaims under theories of breach of contract, promissory estoppel, negligent misrepresentation, and intentional misrepresentation/fraud.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. Rule 55(a) requires that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a plaintiff's claim is not "sum certain" or a "sum that can be made certain by computation," the plaintiff "must apply to the court for default judgment" under Rule 55(b)(2). Fed. R. Civ. P. 55(b)(1)–(2).

In determining whether to award a default judgment, the Court accepts as true the well pleaded factual allegations in the Complaint as to liability. *Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, "A complaint that avers bare legal conclusions or

naked assertion[s] devoid of further factual enhancement, is insufficient to award default judgment." *Select Specialty Hosp. - Quad Cities, Inc. v. WH Administrators, Inc.*, No. CV PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020) (internal quotation omitted).  Moreover, the Court must consider whether the unchallenged facts constitute a legitimate cause of action because a party in default does not admit mere conclusions of law.  *United States v. Redden*, No. 09-cv-2688-WDQ, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790).  Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the Court determines that liability is established, the Court must then determine the appropriate amount of damages or other relief.  *CGI Fin., Inc., v. Johnson*, No. 12-cv-1985-ELH, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013).  In this regard, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 593.  A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence.  *Redden*, 2010 WL 2651607, at *2.  Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  The Court is not required to conduct an evidentiary hearing to determine damages; it may rely on affidavits or documentary evidence in the record to determine the appropriate sum.  *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F.

Case 1:20-cv-02479-CCB   Document 105   Filed 03/15/24   Page 7 of 16


Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).  Here, the undersigned has done both.

## III.    ANALYSIS

### A.    <u>Liability</u>

#### 1.    *Breach of Contract*

Subject matter jurisdiction in this case is predicated on the diversity of the parties.  A federal court sitting in diversity must apply the choice of law rules applicable in the forum state. *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496–97 (1941). In contract actions, Maryland courts generally apply the law of the jurisdiction where the contract was made pursuant to the doctrine of *lex loci contractus*. *See, e.g., Allstate Ins. Co. v. Hart*, 327 Md. 526 (1992).  Here, the Court applies the substantive contract law of Maryland given that both parties based their claims/counterclaims regarding the purported contracts on acts and events that occurred in Maryland and Judge Blake's prior identification that Maryland substantive law is proper in her Memorandum Opinion granting in part and denying in part Frozen Wheels' motion to dismiss Potomac Valley's Initial Counterclaims.  *See* (ECF No. 40 at 1; ECF No. 44 at 1, 7; ECF No. 46).

To state a claim for breach of contract under Maryland law, "a plaintiff must simply show that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 265 (2018) (internal quotation omitted).  Judge Blake previously identified that Potomac Valley's purchase order for 1,500,000 gowns and accompanying allegation that Frozen Wheels confirmed that order in writing indicated that Potomac Valley sufficiently pled the existence of a contract between the parties.  *See Frozen Wheels, LLC v. Potomac Valley Home Med., Inc.*, No. CV CCB-20-2479, 2021 WL 2226175, at

*2–3 (D. Md. June 2, 2021). Potomac Valley's Second Counterclaim (ECF No. 44)[4] relies on those same factual allegations, so the undersigned finds no compelling reason to depart from Judge Blake's conclusion that those assertions plausibly allege the existence of a contract for 1,500,000 isolation gowns between the parties. In fact, Potomac Valley's assertion in its Second Counterclaim that the purchase order was confirmed in writing is supported by the evidence presented by Potomac Valley during the March 12, 2024, damages hearing, during which Potomac Valley set forth the metadata from a message from Halwani indicating he/Frozen Wheels would source the 1,500,000 gowns. (ECF No. 103-2 at 2). Potomac Valley's Second Counterclaim also alleges that Frozen Wheels breached that contract by providing only 616,450 isolation gowns. (ECF No. 44 at 8). The undersigned therefore recommends finding that the allegations in Potomac Valley's operative counterclaim plausibly set forth a legitimate cause of action for breach of contract, entitling Potomac Valley to default judgment regarding the same. *See Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 594 (D. Md. 2013) ("In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability."); *Ryan*, 253 F.3d at 780 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

    2.    *Promissory Estoppel*

    "A promissory estoppel claim requires that the following four elements be satisfied: (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and

---

[4] Potomac Valley attaches to its Motion a copy of the Amended Counterclaim which Judge Blake determined was improper and futile in analyzing Frozen Wheels' prior motion to dismiss and Potomac Valley's motion for leave to amend. Accordingly, the undersigned analyzes the present Motion with reference to the operative counterclaim—the Second Counterclaim—rather than the Amended Counterclaim.

reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise." *Oliveira v. Sugarman*, 226 Md. App. 524, 553–54 (2016). Because the undersigned recommends for the reasons above that default judgment be entered against Frozen Wheels regarding Potomac Valley's breach of contract claim, the undersigned also recommends finding that Potomac Valley is precluded from recovering under a theory of promissory estoppel and dismiss that claim as moot. *See, e.g.*, *Wright Sols., Inc. v. Wright*, No. CIV.A. CBD-12-178, 2013 WL 1702548, at *5 (D. Md. Apr. 18, 2013) ("However, a claim for promissory estoppel or detrimental reliance is moot when there is no dispute as to the existence of an enforceable contract."); *Jay Dee/Mole Joint Venture v. Mayor and City Council of Balt.*, 725 F. Supp. 2d 513, 531–32 (D. Md. 2010) ("Once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties . . . then a party may no longer recover under the theory of promissory estoppel . . . Because I have found that an enforceable contract [] existed . . . the City's promissory estoppel claim will be dismissed as moot.").

### 3. *Negligent Misrepresentation and Intentional Misrepresentation*

"A plaintiff alleging negligent misrepresentation must establish the following elements: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damages proximately caused by the defendant's negligence." *Jenkins v. PBG, Inc.*, 268 F. Supp. 2d 593, 597 (D. Md. 2003) (citing *Sheets v. Brethren Mut. Inc. Co.*, 342 Md. 634 (1996)). "Claims for negligent misrepresentation are not typically subject to the heightened

pleading standards in Fed. R. Civ. P. 9(b)."  No. CV SAG-19-2780, 2020 WL 998740, at *6 n.3

(D. Md. Mar. 2, 2020); *see also Balt. Cnty. v. Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir.

2007).   However, "A 'negligent misrepresentation claim based on statements promissory or

predictive in nature' is not viable '[u]nless the plaintiff puts forward evidence tending to show that

the 'promisor' or 'predictor' made the statements with the present intention not to perform . . . .'"

*200 N. Gilmor, LLC v. Cap. One, Nat'l Ass'n*, 863 F. Supp. 2d 480, 493 (quoting *Miller v. Fairchild*

*Indus., Inc.*, 97 Md. App. 324, 346 (1993)).  "But, if the party knows the representation to be false

at the time it is made, then the claim is one for *fraudulent* misrepresentation and the negligent

misrepresentation claim [is converted] into a claim for fraudulent misrepresentation."   *Id.*

(emphasis in original); *see also Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, No. CIVA

DKC 2005-2882, 2006 WL 2572474, at *20 (D. Md. Sept. 5, 2006) ("To the extent that a party

making the representation about its future conduct knows at the time the statement is made that it

is false, the claim converts to one of *fraudulent* misrepresentation.") (emphasis in original).

A plaintiff alleging fraudulent misrepresentation, on the other hand, must allege that "(1)

the defendant made a false representation to the plaintiff, (2) the falsity of the representation was

either known to the defendant or the representation was made with reckless indifference to its truth,

(3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff

relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered

compensable injury as a result of the misrepresentation." *Exxon Mobil Corp. v. Albright*, 433 Md.

303, 334, *on reconsideration in part*, 433 Md. 502 (2013) (internal quotation omitted).  Unlike a

claim for negligent misrepresentation, a claim for fraudulent or intentional misrepresentation must

be pled with particularity in compliance with Federal Rule of Civil Procedure 9(b).  *Nordstrom,*

*Inc. v. Schwartz*, No. GJH-18-3080, 2019 WL 4221475, at *4 (D. Md. Sept. 5, 2019); *see also* Fed.

R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  "The circumstances required to be pled with particularity are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [s]he obtained thereby.'"  *Nordstrom*, 2019 WL 4221475, at \*4 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Judge Blake previously dismissed Potomac Valley's negligent misrepresentation claim without leave to amend because it was based on Potomac Valley's assertion that Frozen Wheels "made a representation of a future intention to provide 1,500,000 isolation gowns."  *Frozen Wheels, LLC*, 2021 WL 2226175, at \*4.  Further, Judge Blake dismissed Potomac Valley's fraudulent misrepresentation claim—also without leave to amend—because "While Potomac pled the identity of the person making the alleged misrepresentation, there are no allegations as to the other necessary circumstances of the alleged fraud, including the time and place of the alleged statement."  *Id.* at \*5.  Judge Blake also noted that Potomac Valley insufficiently pled that any misrepresentations were made with fraudulent intent.  *Id.*  Potomac Valley's Second Counterclaim suffers from the same flaws regarding both causes of action.  In fact, Potomac Valley's misrepresentation claims in its Second Counterclaim are virtually identical to the misrepresentation claims in the Amended Counterclaim that Judge Blake previously forbade Potomac Valley from filing as futile.  *Compare* (ECF No. 20-4 at 14–17), *with* (ECF No. 44 at 10–

12).[5] The main noticeable differences between the previously rejected Amended Counterclaim and the Second Counterclaim are that (1) Frozen Wheels is now referred to as "Frozen Wheels" instead of "Frozen Wheels, LLC"; and (2) Potomac Valley is now referred to as "PVHM" instead of "Potomac Valley Home Medical, Inc."  The Second Counterclaim again bases Potomac Valley's negligent misrepresentation claim on, at worst, "a non-actionable promise of future conduct or, [at best], if the allegation is that Frozen Wheels knew its representations to be false, it is duplicative of its intentional misrepresentation claim."  *Frozen Wheels, LLC*, 2021 WL 2226175, at *5.  And with respect to Potomac Valley's claim for fraudulent misrepresentation, it still fails to allege the necessary components such as the time and place of the allegedly fraudulent statement(s).  Even assuming *arguendo* that the metadata information confirming Frozen Wheels' acceptance in writing (which was produced *post hac* at the March 12, 2024, hearing rather than being pled in the Second Counterclaim) satisfies the time and place requirements, the Second Counterclaim still asserts only legal conclusions regarding Frozen Wheels' fraudulent intent unsupported by additional facts from which it is reasonable to infer that Frozen Wheels knew the statement to be false when it was made.  *See id.* at *5 ("Potomac asserts only that Halwani made the representation at issue with knowledge of its falsity or with reckless indifference to the truth of the representation. This assertion is a legal conclusion unsupported by any factual allegations in Potomac's complaint . . . Though Potomac alleges that Halwani made a representation that Frozen Wheels could provide 1,500,000 gowns and Frozen Wheels confirmed that representation in writing, there are no other

---

[5] To be clear, Judge Blake's ruling dismissing Potomac Valley's claims for negligent and fraudulent misrepresentation was with regard to Potomac Valley's Initial Counterclaim—not the Second Counterclaim submitted in response to Frozen Wheels' Second Amended Complaint—and occurred after Potomac Valley had already filed its Second Amended Complaint.  In other words, Potomac Valley filed its Second Counterclaim (the operative counterclaim at the time the present Motion was filed) *before* Judge Blake dismissed the misrepresentation claims in Potomac Valley's Initial Counterclaim that are identical in substance to the misrepresentation claims in Potomac Valley's Second Counterclaim.

facts from which it is reasonable to infer that Halwani knew the statement to be false at the time it was made."). Accordingly, the undersigned respectfully recommends denying Potomac Valley any relief on its negligent or fraudulent misrepresentation claims just as Judge Blake previously found such claims to be insufficiently pled and subject to dismissal.

      B.     <u>Damages</u>

As noted previously, "Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Hanover Ins. Co. v. Persaud Cos., Inc.*, No. GJH-13-472, 2015 WL 4496448, at *3 (D. Md. July 22, 2015). Rather, the Court must make an independent determination regarding damages allegations. "In so doing, the Court may conduct an evidentiary hearing. The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award." *Chanel, Inc. v. Banks*, No. WDQ-09-843, 2011 WL 121700, at *4 (D. Md. Jan. 13, 2011). "In Maryland, a party suffering a breach of contract is entitled to recover as damages the amount that would place him in the position he would have been in had the contract not been broken." *BioVeris Corp. v. Jernigan*, No. CV DKC 2004-2264, 2005 WL 8174701, at *2 (D. Md. Sept. 13, 2005) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 506 (4th Cir 1986)). "Thus, the injured party is able to realize his expectations from the contract had there been no breach." *Id.*

The undersigned previously concluded that there was an inadequate evidentiary basis in the record to award Potomac Valley the damages it seeks because Potomac Valley did not clearly set forth evidence, affidavits, or itemizations demonstrating its entitlement to the $2,959.892.50 in damages it seeks. (ECF No. 99). The undersigned held an evidentiary hearing on March 12, 2024, to get further clarity. In anticipation of the hearing, Potomac Valley submitted a damages chart with supporting documentation. At the hearing, however, the undersigned observed certain errors

in the damages chart when compared to the supporting documents regarding: (1) Potomac Valley overstating the cost of certain items; and (2) Potomac Valley including shipping charges in its own costs when the documents contemplated Frozen Wheels absorbing those costs. The undersigned offered Potomac Valley the opportunity to submit a revised chart, and it did so on March 13, 2024. (ECF No. 104). While the revised chart included some corrections, it also contained new errors, this time in understating its actual profits by misstating the cost of goods sold (the 616,450 gowns).

However, the undersigned has now reviewed the backup documentation for calculating expected versus actual profits and is now satisfied that those documents do support a claim of damages, albeit at a different figure from the numbers offered by Potomac Valley. Specifically, those documents demonstrate that the State of Maryland entered into a purchase order with Potomac Valley for the 1,500,000 gowns at a rate of $8.00/gown. (ECF No. 103-1). Potomac Valley's original purchase order to Frozen Wheels, in turn, verified that 1,000,000 of the gowns were to be sold by Frozen Wheels to Potomac Valley at a rate of $4.65/gown with the remaining 500,000 gowns to be sold by Frozen Wheels to Potomac Valley at a rate of $5.00/gown. (ECF No. 103-3). Thus, Potomac Valley's expected profits from the sale would have been $4,850,000.

Potomac Valley also submitted purchase orders and invoices demonstrating that Frozen Wheels only supplied a total of 616,450 gowns which were, in turn, re-sold to the State of Maryland at a rate of $8.00/gown. (ECF No. 103-4). Of the 616,450 gowns actually provided to Potomac Valley, 465,650 of them were sold to Potomac Valley at a rate of $4.50/gown. (ECF No. 21-4; ECF No. 102-1). Thus, Potomac Valley's actual profit on those 465,650 gowns was $1,629,775 (a profit rate of $3.50/gown for 465,650 gowns). The record also indicates that the remaining 150,800 gowns of the 616,450-gown order were sold to Potomac Valley at a rate of

14

$4.65/gown.  (ECF No. 21-5; ECF No. 102-2).[6] Thus, Potomac Valley's actual profit on those

150,800 gowns was $505,180 (a profit rate of $3.35/gown for 150,800 gowns).  Accordingly, the

actual profits from the sale of the 616,450 gowns totals $2,134,955.

The difference between Potomac Valley's expected profits of $4,850,000 and Potomac

Valley's actual profits on the lesser number of gowns of $2,134,955 is $2,715,045.   The

undersigned thus recommends awarding Potomac Valley $2,715,045 in damages resulting from

Frozen Wheels' breach of contract, or the difference between the expected profits and the actual

profits.  *See WSC/2005 LLC*, 460 Md. at 268 ("In an action for breach of contract, courts attempt

to put the injured party in as good a position as it would have occupied had the contract been fully

performed by the breaching party.").

Potomac Valley also requests attorney fees in the amount of $50,000, which should be

denied.   "Maryland follows the American rule which stands as a barrier to recovery, as

consequential damages, of foreseeable counsel fees incurred in enforcing remedies for breach of

contract . . . Therefore, in the absence of a statute, rule or contract expressly allowing the recovery

of attorneys' fees, a prevailing party in a lawsuit may not ordinarily recover attorneys' fees." *Pac.*

*Emps. Ins. Co. v. Eig*, 160 Md. App. 416, 439 (2004) (internal quotation omitted); *see also*

*Temescal Wellness of Md., LLC v. Emp. Tools & Sols., Inc.*, No. 20-CV-3650-JRR, 2022 WL

4969305, at *3 (D. Md. Oct. 3, 2022), *report and recommendation adopted*, No. 1:20-CV-03650-

JRR, 2022 WL 18860315 (D. Md. Nov. 2, 2022) ("The 'American Rule' provides that each litigant

in a case will pay their own attorney's fees unless the relevant statute or contract in question

---

[6] The invoices and bills of lading cumulatively representing the provision of 616,450 gown were originally submitted in connection with Frozen Wheels' Motion to Dismiss Potomac Valley's Counterclaims (ECF No. 21).  Potomac Valley did not challenge the authenticity of those documents in its opposition.  Nor did Potomac Valley raise any issues with the documents during the March 12, 2024, hearing when the Court expressly referenced and relied on those invoices and bills of lading.

provides otherwise.  Plaintiff alleges five (5) causes of action [including breach of contract], none

of which is identified as entitling the prevailing party to the recovery of attorney's fees.") (quoting

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)).  Potomac Valley has set forth

no statute or rule allowing it to recover attorney fees.  Nor does Potomac Valley point to any

specific contractual language that justifies an award of attorney fees.  Accordingly, the Motion

should be denied to the extent that it seeks an award of attorney fees.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends granting in part and

denying in part Potomac Valley's Motion for Default Judgement (ECF No. 97).  Specifically, the

Motion should be granted to the extent it seeks default judgment against Frozen Wheels for liability

on Potomac Valley's breach of contract counterclaim.  The Motion should be denied, however, to

the extent it seeks default judgment regarding Potomac Valley's claims for promissory estoppel,

negligent misrepresentation, and/or intentional misrepresentation.   Further, the undersigned

recommends awarding Potomac Valley $2,715,045 in damages for the reasons explained above.

Any objections to this Report and Recommendation must be served and filed within

fourteen (14) days pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b) (D.

Md. 2023).


|                              |                                      |
|------------------------------|--------------------------------------|
|                              | _____/s/_____        |
| Dated: March 15, 2024        | J. Mark Coulson                      |
|                              | United States Magistrate Judge       |